## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PATRICK BREAUX, et al.**<br><br>                              **Plaintiffs,**<br><br>            **v.**<br><br>**ALLIANCE LIFTBOATS, LLC, et al.**<br>                              **Defendants.** | **CIVIL ACTION NO.:  2:24-cv-01000**<br><br>**JUDGE SUSIE MORGAN**<br><br>**MAGISTRATE JUDGE KAREN WELLS ROBY** |

### MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT ALLIANCE LIFTBOATS LLC

**MAY IT PLEASE THE COURT:**

Defendant Alliance Liftboats, LLC ("Defendant") respectfully submits this Memorandum in Support of its Motion for Summary Judgment. Specifically, Defendant moves for summary judgment for a determination that, as a matter of law, the Department of Labor ("DOL") standard for determining whether an employee is "employed as a seaman" for overtime pay purposes contradicts the ordinary terms in the Fair Labor Standards Act of 1938 ("FLSA").[1] This Court should therefore rule that DOL regulations play no role in determining whether Plaintiff Patrick Breaux ("Plaintiff") and any future or putative opt-in plaintiffs are "employed as a seaman." Applying the plain meaning of the statutory terms, there is no dispute that the crewmembers of Defendant's liftboats, including Plaintiff, are "employed as seamen," and thus exempt from FLSA overtime pay.

---

[1] 29 U.S.C. § 213(b)(6). Consistent with Defendant's reservations made in the Parties' Joint Motion to Continue, Defendant specifically reserves the right to file a subsequent motion for summary judgment on the merits of Plaintiff's claims following discovery regarding the same.

## I.     BACKGROUND

Plaintiff alleges that during the past three years he was employed as a cook aboard the L/B MIAMI and briefly aboard the L/B Dallas, both vessels operated by Defendant.[2] In his role, Plaintiff's primary duties included cooking meals for crewmembers and passengers.[3] According to Plaintiff, he was improperly classified as exempt from the FLSA's overtime provisions and seeks to represent a class of similarly situated employees whom he contends were also misclassified as seamen exempt from overtime pay.[4]

Plaintiff explains how those working aboard liftboats serve in multiple roles in various positions, including cooks, galley hands, and crane operators. Nonetheless, Plaintiff seeks to represent all individuals employed by Alliance Liftboats, LLC and/or non-party Helix Energy Solutions who served as crewmembers aboard nine different vessels,[5] including seven vessels on which Plaintiff has never worked, who were classified as exempt from overtime, regardless of what their role or primary duties aboard any of these nine vessels were.[6]

Defendant disputes the breadth of Plaintiff's proposed class definition, noting that Helix Energy Solutions is not a party to the case, that Plaintiff did not work on most of the vessels listed, and that the proposed definition includes improper legal conclusions regarding the nature of the employees' work. Defendant also emphasizes that the job duties and the analysis required to

---

[2] R. Doc. 1, Cmpl., at ¶ 4; *see also id.*, at ¶ 26 ("For the past three years, Mr. Breaux worked as a cook aboard the L/B MIAMI and briefly aboard other vessels, including the L/B DALLAS.").

[3] *Id.* at ¶ 9; *see also id.*, at ¶ 27. Defendant assumes Plaintiff's allegations as it relates to his primary duties for purposes of this Motion only and expressly reserves and does not waive the right to later challenge or refute these allegations.

[4] *Id.* at ¶ 35.

[5] Specifically, the L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DLLAS.

[6] *Id.* at ¶ 35.

PD.49376439.3

determine FLSA seaman status differ significantly between and among cooks, galley hands, and crane operators, while Plaintiff's own allegations focus solely on his work as a cook preparing meals for crewmembers and passengers and not work performed in any other role. But even so, as analyzed in more detail below, each of the crewmembers Plaintiff includes in his Complaint, including cooks, galley hands, and crane operators, are seamen exempt from the FLSA's overtime pay requirements.

It is undisputed that Defendant's employees who work aboard liftboats are Coast Guard licensed mariners who serve as mates, deckhands, ordinary seamen, and able-bodied seamen.[7] All employees who work on Defendant's vessels are responsible and accountable for maintaining current and valid Merchant Mariners Credentials, Transportation Worker Identification Credentials, endorsements, documents, and licenses, which must be kept on the vessel whenever the employee is onboard.[8] All employees aboard the vessel are required to carry out any lawful order from the captain, including, but not limited to: (1) standing bridge watch; (2) assisting in vessel maintenance such as, chipping, painting, cleaning, sanitary, and general upkeep of the vessel; (3) assisting in mooring the vessel, anchoring, setting the gangway; and (4) assisting in fire watch.[9]

It is critical for any jack-up vessel to maintain structural integrity of the legs that are relied on for stability.[10] The legs on all jack-up vessels "are extremely vital to the vessels ability to remain erect while they are in the elevated position above the ocean floor."[11] Thus, Defendant's crewmembers must "identify all potentially hazardous conditions, especially those situations that

---

[7] Declaration of Jared Chiasson, attached hereto as **Exhibit 1** (Chiasson Decl.), at ¶ 3.

[8] Alliance Standard Operating Procedures, attached hereto as **Exhibit 2** (Alliance SOPs), at 41 (ALLIANCE_00489).

[9] **Exhibit 2** (Alliance SOPs), at 46 (ALLIANCE_00494).

[10] **Exhibit 2** (Alliance SOPs), at 109 (ALLIANCE_00557).

[11] **Exhibit 2** (Alliance SOPs), at 109 (ALLIANCE_00557).

may occur where catastrophic damage may occur to a jack up vessel."[12] The employees' work is performed consistent with the vessel's operational needs and is imperative to the vessel's ability to safely transport people and equipment on navigable waters.[13]

Those whose more specific duties include operating the crane and cooking meals are crewmembers subject to the direct supervision of the vessel's captain, and live, eat, sleep, and work aboard the vessel for the duration of their hitch assignments.[14] All employees whose duties, like Plaintiff's, included cooking prepared meals for other crewmembers, such that their work aided the vessel's mission, transportation function, and seaworthiness.[15] And although Plaintiff does not claim to have operated a crane aboard Defendant's vessels during the relevant time period, the work performed by those whose duties include operating a crane likewise aided the vessel's mission, transportation function, and seaworthiness. A crane operator's primary responsibility—operating the vessel's crane—is not merely a peripheral or industrial task, but a central function that directly supports the vessel's overall function and transportation mission. Specifically, after traveling to the platform on navigable waters, those whose duties include using the crane are responsible for moving personnel and cargo between the vessel and other platforms, docks, and vessels, as well as within the vessel itself.[16] This work is performed in close coordination with the vessel's navigation and operational needs, and is critical to the vessel's ability to fulfill the purpose of its charter.[17] Indeed,

---

[12] **Exhibit 2** (Alliance SOPs), at 109 (ALLIANCE_00557).

[13] **Exhibit 1** (Chiasson Decl.), at ¶ 13.

[14] **Exhibit 1** (Chiasson Decl.), at ¶ 5.

[15] **Exhibit 1** (Chiasson Decl.), at ¶ 9. Those duties also included, for example: (1) maintaining and cost controlling the galley inventory in consultation with the captain; (2) good housekeeping in all galley and mess areas; (3) managing and maintaining the safe operation of the galley and all galley appliances; and (4) assist as needed during any shipboard emergency as necessary. **Exhibit 2** (Alliance SOPs), at 46 (ALLIANCE_00494).

[16] **Exhibit 1** (Chiasson Decl.), at ¶ 13.

[17] **Exhibit 1** (Chiasson Decl.), at ¶ 13.

4

"[t]he crane operations are a *sine qua non* of the liftboat's function as a means of transportation; without the cranes, the liftboat serves no transportive purpose."[18] Nevertheless, even when the liftboat is jacked up, the crewmembers retain responsibility for standing lookout, checking the engine room, splicing rope, cleaning, and performing other quintessential seaman's work.[19]

Setting aside the disparate nature of these employees' work aboard the vessel, the work performed by those employed as cooks, galley hands, or crane operators qualify as seaman exempt from the FLSA's overtime provisions. Accordingly, Defendant now moves for summary judgment, seeking a ruling that the DOL's regulatory standard for determining "seaman" status under the FLSA is contrary to the plain language of the statute. Based on a proper understanding of the plain terms of the FLSA seaman exemption, as a matter of law, Plaintiff and all similarly situated liftboat crewmembers are exempt from FLSA overtime pay because they are "employed as seamen."

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A dispute of fact "is material if its resolution could affect the outcome of the action."[21] When determining if a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[22] All reasonable inferences are drawn

---

[18] *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 380 (5th Cir. 2021) (Jones, J., dissenting).

[19] **Exhibit 1** (Chiasson Decl.), at ¶ 14; *see also* **Exhibit 2** (Alliance SOPs), at 46 (ALLIANCE_000494).

[20] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[21] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citation omitted).

[22] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

in favor of the nonmoving party.[23] No material factual dispute exists and the moving party is entitled to judgment as a matter of law if, viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party.[24]

## III.    LAW & ARGUMENT

This Court should grant summary judgment because, as a matter of law, there is no genuine dispute that Plaintiff and other crewmembers of Defendant's liftboats are "employed as seamen," thereby exempting them from the FLSA's overtime pay requirement. The DOL's 20% standard for determining whether an employee is "employed as a seaman" is both arbitrary and contradictory of the term's ordinary meaning under the FLSA. Therefore, these regulations should play no role in determining whether the exemption applies. Accordingly, applying the ordinary contemporary meaning of the seaman exemption confirms that Plaintiff and the other crewmembers are, as a matter of law, exempt from FLSA overtime requirements.

### A.    Background on the seaman exemption.

The FLSA requires overtime pay for any employee who works more than 40 hours in a standard workweek.[25] But the "overtime-pay rule is subject to several enumerated exemptions."[26] Courts must "give a 'fair reading' to the exemptions"—rather than the previously espoused narrow interpretation—and the employer bears the burden of showing that an exemption applies.[27] An

---

[23] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[24] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[25] 29 U.S.C. § 207(a)(1).

[26] *Cunningham v. Circle 8 Crane Servs., L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (quoting *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021)).

[27] *Id.* (quoting *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018)); *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018); *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020) ("Under the Supreme Court's decision in *Encino Motorcars*, we must give FLSA exemptions a 'fair reading' rather than narrowly construing them against the employer.").

6

individual "employed as a seaman" qualifies for one such exemption.[28] The FLSA's exemptions were designed to cover types of work that were "difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult."[29]

The FLSA explicitly exempts from overtime pay "any employee employed as a seaman."[30] Although the exemption has been part of the FLSA since its original enactment in 1938, the statute does not define what it means to be "employed as a seaman."[31] As the Fifth Circuit recently explained in *Restaurant Law Center v. Department of Labor*, because the term "employed as a seaman" is undefined, the Court "must parse the text of the FLSA using the traditional tools of statutory interpretation" to determine "the ordinary meaning of these terms" in 1938, when the exemption "was added to the FLSA."[32]

Eight years after the FLSA's enactment, the Fifth Circuit in *Walling v. W. D. Haden Co.* underwent precisely this analysis. Specifically, in *Walling*, the Fifth Circuit clarified that, "[s]ince the Act does not define the word seaman, it must be taken in its ordinary meaning."[33] The central question for this Court, therefore, is whether crewmembers employed to serve on liftboats

---

[28] 29 U.S.C. § 213(b)(12).

[29] *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 166 (2012); *see also E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48 (2025) ("Congress recognized that a minimum wage and overtime pay would be impractical or inappropriate for some jobs. So the Act exempts many categories of employees from the minimum-wage requirement and exempts many more from the overtime-pay requirement.").

[30] 29 U.S.C. § 213(b)(12).

[31] *See* 52 Stat. 1067 § 13(a)(3) (1938).

[32] *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 171 (5th Cir. 2024) (invalidating the DOL's tip credit rules under the standards articulated by the U.S. Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024)).

[33] *Id.* (concluding that because in that case, the "maritime work is incidental and occasional, taking but a small fraction of the work time" were not principally employed as seaman and therefore were not exempt).

PD.49376439.3

transporting crews and supplies across navigable water to support work performed on offshore platforms located in the Gulf of Mexico are "employed as seaman" under the ordinary meaning of the FLSA. The answer is plainly "yes."

> **B.    After *Loper Bright*, courts no longer owe deference to the DOL's 20% test for the seaman exemption.**

In the wake of the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, courts are required to utilize normal rules of statutory interpretation to determine the meaning of ambiguous statutes instead of accepting or otherwise giving weight to the DOL's definitions, as the now overruled *Chevron* doctrine previously mandated.[34] As a result, courts must now independently interpret the meaning of "employed as a seaman" when applying the seaman exemption, rather than deferring to agency regulations.[35]

Established by the U.S. Supreme Court in 1984, *Chevron* deference required courts to defer to "permissible" agency interpretations of the statutes those agencies administer, even when a reviewing court read the statute differently.[36] Thus, after Congress promulgated the FLSA and in the wake of the now overturned *Chevron* doctrine, courts increasingly accepted the DOL's interpretation of the FLSA's plain language as all but binding. One poignant example of the court's exercise of such deference *Chevron* previously required is the Fifth Circuit's 2021 ruling in *Adams v. All Coast, L.L.C.*

In *Adams*, the district court found that liftboat crewmembers were seamen because all work performed by the crew "aid[ed] the vessel as a means of transportation."[37] The entire crew serviced

---

[34] 603 U.S. 369, 412–13 (2024).

[35] 153 F.2d at 199.

[36] *Chevron v. Nat'l Res. Defense Council*, 467 U.S. 837 (1984) *overruled by Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024).

[37] *Adams v. All Coast, LLC*, 420 F. Supp. 3d 509, 512 (W.D. La. 2019), *rev'd*, 15 F.4th 365.

PD.49376439.3

liftboats "chartered by other companies to transport people and equipment on the liftboat to a worksite offshore."[38] The cranes themselves "were used to transport personnel, supplies, and equipment back and forth between the liftboat and the dock, the liftboat and the worksite platform, the liftboat and other vessels, and within the liftboat itself."[39] Because the crews assisted in the operation of the liftboats "as a means of transportation," the district court ruled that "the amount of time the plaintiffs spent operating the crane, whether 10% of their time or 100% is irrelevant."[40]

The Fifth Circuit reversed, taking issue with the district court's finding that the time spent operating cranes was irrelevant.[41] The panel stated, "[t]hat conclusion runs contrary to the regulatory language and our decisions interpreting it,"[42] deferring, as *Chevron* then required, to the DOL's position that an individual is not employed as a seaman "if [non-seaman work] occupies more than 20 percent of the time worked by the employee during the workweek."[43] The *Adams* court adopted this regulatory cutoff because it found "no conflict . . . between the statute's plain meaning and the regulatory guidance," thus entitling the regulation "to great weight."[44]

The panel relied almost exclusively on DOL regulations in coming to its conclusion, holding that "the plain meaning of 29 C.F.R. § 783.31, and the illustrative examples in §§ 783.32 and 783.34, suggest the employees were not engaged in seamen's work when operating the cranes."[45] But having not yet received the U.S. Supreme Court's ruling in *Loper Bright*, the *Adams* court did not conduct

---

[38] *Id.* at 514.

[39] *Id.*

[40] *Id.* at 512 (alteration adopted).

[41] *Adams*, 15 F.4th at 369.

[42] *Id.*

[43] *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 376 (5th Cir. 2021) (quoting 29 C.F.R. § 783.37).

[44] *Id.* at 369, 370 n.2 (quoting *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 279 (5th Cir. 2014)).

[45] *Id.* at 371.

an independent assessment of what it means to be "employed as a seaman," instead deferring to the

DOL's 20% standard simply because it found  "no conflict . . . between the statute's plain meaning

and the regulatory guidance."[46] Having determined there was "no conflict," the *Adams* court did not

analyze whether the arbitrarily established 20% rule was the "single, best meaning" of the statute.[47]

But *Loper Bright*, issued three years after *Adams*, makes this independent judicial analysis

mandatory, clarifying "the unremarkable, yet elemental proposition reflected in judicial practice

dating back to *Marbury* that courts decide legal questions by applying their own judgment, even in

agency cases."[48] The Supreme Court emphasized that courts "routinely confront statutory

ambiguities," and they should not simply "throw up their hands" in the face of that ambiguity by

deferring to agencies.[49] "Courts instead understand that such statutes, no matter how impenetrable,

---

[46] *Id.* at 370 n.2.

[47] Indeed, even before the U.S. Supreme Court issued its ruling in *Loper Bright*, the *Adams* panel's decision received heavy criticism from other members of the court. For example, in her dissent from the court's denial of rehearing *en banc*, Judge Edith H. Jones, pointing to *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), noted that FLSA exemptions must be read fairly, not narrowly. *Adams*, 15 F.4th at 377 (Jones, J., dissenting). As Judge Jones reasoned, post-*Encino Motorcars*, the court has "no license to give the exemption[s] anything but a fair reading," but lamenting, unfortunately ""this court has not figured that out." *Id.* As Judge Jennifer Walker Elrod would later explain in another seaman exemption opinion issued before *Loper Bright*, "The court's byzantine seaman analysis—undergirded by precedents and regulations from the pre-*Encino Motorcars* ancien regime—effectively 'splice[d] and dice[d] the seaman exemption into portions of 'seaman' and 'non-seaman' work within the space of each voyage.'" *McKnight v. Helix Energy Solutions Grp., Inc.*, No. 21-20109, 2022 WL 2981420, at *1 (5th Cir. July 27, 2022) (quoting *Adams v. All Coast, LLC*, 15 F.4th 365, 381 (5th Cir. 2021) (Jones, J. dissenting)). This "tendentious and incomplete reading[] of statutory and regulatory text encourage[s] costly litigation and the threat of large damages the [FLSA] authorizes." *Id.* at *1 (quoting *Adams*, 15 F.4th at 377 (Jones, J. dissenting)).

[48] *Mayfield v. U.S. Dep't of Lab.*, 117 F.4th 611, 617 (5th Cir. 2024) (cleaned up) (quoting *Loper Bright*, 603 U.S. at 391–92); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

[49] *Loper Bright*, 603 U.S. at 400.

do—in fact, must—have a single, best meaning."[50] The Supreme Court held that courts cannot simply adopt a "permissible" interpretation by an agency, but instead should "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity."[51] Anything less than the best statutory interpretation "is not permissible."[52]

As a result, the analysis in *Adams* is no longer permissible. *Loper Bright* implicitly overruled *Adams* and its predecessors that relied on the DOL's interpretation of ambiguous overtime pay exemptions, where there had been no express delegation. The Fifth Circuit recognizes that panel opinions can be implicitly overruled by "an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the] *en banc* court."[53] In basic terms, "Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent."[54] One such example is when "an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis."[55] That is precisely what has happened with the panel's decision in *Adams*.

Supreme Court jurisprudence on agency deference when interpreting ambiguous or undefined statutory terms has "fundamentally change[d]" after *Loper Bright*.[56] Where the *Adams* "panel largely assumed" it could and should defer to the DOL's interpretation of the phrase

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (quoting *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

[54] *Id.* (cleaned up) (quoting *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018)).

[55] *Id.* (cleaned up) (quoting *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 742 (5th Cir. 2018)).

[56] *Id.*

PD.49376439.3

"employed as a seaman," the Supreme Court has since established a new framework.[57] The panel opinion in *Adams* is thus no longer controlling following *Loper Bright*. Courts are responsible for interpreting the FLSA, not the DOL. This Court must therefore make an independent judgment on the ordinary meaning of "employed as a seaman" using ordinary cannons of construction, without deference to either *Adams* or the DOL's interpretive guidance.

### C.    The DOL's 20% rule for determining whether an employee is "employed as a seaman" contradicts the ordinary meaning of the term under the FLSA.

The DOL's 20% standard and other interpretive guidance is inconsistent with the text of the FLSA and should not control in this case. It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate."[58] Statutory text must be understood "by reviewing text in context."[59] In making the independent determination of the best meaning of statutory terms, a court's starting place is "the statutory text."[60] Undefined statutory terms are to be given their "ordinary, contemporary, common meaning."[61]

Section 213(b) of the FLSA is straightforward: "any employee employed as a seaman" is exempt from the FLSA's overtime pay requirement. This definition should be interpreted broadly to include vessel-based liftboat crewmembers who cook for other crewmembers or use onboard cranes to transport people, supplies, and equipment.

---

[57] *Id.* at 793.

[58] *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014); *see also Rest. L. Ctr.*, 120 F.4th at 175 (same).

[59] *Loper Bright*, 603 U.S. at 392 n.4 (quoting *Pulsifer v. United States*, 601 U.S. 124, 133 (2024)); *see also* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, 2121 (2016) (explaining that the best reading of a statute must be informed by context); *All. for Fair Bd. Recruitment v. SEC*, 125 F.4th 159, 177 (5th Cir. 2024) (en banc).

[60] *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020).

[61] *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 269 (5th Cir. 2015) (citation omitted).

1.    ***Restaurant Law Center* instructs this Court to focus on a seaman's field of work, not specific tasks.**

In *Restaurant Law Center*, the Fifth Circuit clarified how, following *Loper Bright*, courts should independently determine the most natural meaning of statutory terms, including those terms the FLSA leaves undefined. Thus, when analyzing the FLSA's seaman exemption, the focus should be on the employee's "***field of work***" rather than a "granular" examination of "specific tasks."[62] As the Fifth Circuit held, it is inconsistent with the "natural interpretation" of "employed" for a court to arbitrarily determine whether an employee engages in particular tasks at "any given moment" for more than 20% of the time.[63] A "fundamental canon of statutory construction" is to interpret words according to their ordinary meaning "at the time Congress enacted the statute."[64] Accordingly, this Court must give "employed as a seaman" the "best reading" according to its meaning when Congress enacted the FLSA in 1938.

The Fifth's Circuit's holding in *Restaurant Law Center* confirms that statutory terms such as "engaged in" or "employed as" must be read holistically, focusing on "the field of work and the job as a whole" rather than focusing narrowly on "specific tasks."[65] *Restaurant Law Center* involved a similar inquiry into the ordinary meaning of "engaged in" a tipped occupation under the FLSA's exemption for tipped employees.[66] Contemporary dictionaries synonymized "engaged in" to "employed": "(1) occupied; employed; (2) busy or occupied; involved; and (3) to employ or involve

---

[62] *Rest. L. Ctr.*, 120 F.4th at 172 (holding the same for "engaged in" certain employment) (emphasis added).

[63] *Id.*

[64] *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (citations omitted); *see also Encino Motorcars*, 584 U.S. at 85–86 (discerning the meaning of "engaged in selling or servicing automobiles" in FLSA by referencing contemporary dictionaries at the time of enactment).

[65] *Rest. L. Ctr.*, 120 F.4th at 172.

[66] 29 U.S.C. § 203(t).

13

oneself."[67] "Engaged in," according to the Fifth Circuit, "mean[t], *inter alia*, 'employed'" because it refers to one's "entire job."[68]

The DOL rule at issue in *Restaurant Law Center* applied the same 20% standard for determining if an employee was engaged in or employed in a particular field. The DOL argued that an employee was not "engaged" or "employed" as a tipped employee if "non-tipped activities related to the tipped occupation" amounted to more than "20 percent of an employee's time."[69] But the Fifth Circuit squarely rejected this task-based approach as inconsistent with the FLSA's terms. The court explained that "engaged in an occupation"—synonymous with "employed"—does "not mean how often a person performs a task."[70] The "FLSA does not ask whether duties composing that given occupation are themselves each *individually* tip-producing."[71] Rather, whether an employee is "employed in a job" cannot be determined by the DOL's 20% functional test, which is "so granular in divvying up component tasks, a single occupation could quickly break apart, implausibly, into many."[72] In the context of the FLSA's seamen exemption, the untenable result of these same regulations is "to splice and dice the seaman exemption into portions of 'seaman' and 'non-seaman' work within the space of each voyage," rendering the exemption "practically worthless."[73]

*Restaurant Law Center* provides the framework for how courts in the Fifth Circuit must now interpret FLSA exemptions after *Loper Bright*. Courts are required to exercise independent judgment and focus on the employee's field of work ***as a whole***, not on granular or arbitrary breakdowns of

---

[67] *Rest. L. Ctr.*, 120 F.4th at 171 (internal quotations and footnotes omitted),

[68] *Id.* at 172.

[69] *Id.* at 167.

[70] *Id.* at 173 (quoting *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 646 (9th Cir. 2018) (en banc) (Ikuta, J., dissenting)).

[71] *Id.*

[72] *Id.*

[73] *Adams*, 15 F.4th at 381 (Jones, J., dissenting).

14

individual tasks, the atextual approach adopted by the DOL. By rejecting the DOL's 20% rule, the Fifth Circuit made clear that statutory terms like "engaged in" or "employed as" must be interpreted according to their ordinary meaning at the time of the FLSA's enactment, considering the overall occupation rather than dissecting time spent on specific duties.

### 2.    Congress intended "employed as a seaman" to be interpreted broadly.

This Court should adopt the approach outlined in *Restaurant Law Center* to determine the ordinary meaning of "employed as a seaman" based on its contemporary and historical usage. Around 1938, the term "seaman" was broadly defined to include:

- "Sailors; mariners; persons whose business is navigating ships, or who are connected with the ship as such and in some capacity assist in its conduct, maintenance, or service."[74]

- "One whose occupation is to assist in the management of ships at sea; a mariner; a sailor; applied both to officers and common mariners."[75]

- "[O]ne whose occupation or business is on the sea; a sailor as opposed to a landsman."[76]

- "[E]very person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board [a ship]."[77]

Consistent with these definitions, the Fifth Circuit in *W. D. Haden Co.* recognized that Congress intended "seaman" to be interpreted "broad[ly]."[78] When the FLSA was first enacted, work performed by liftboat crewmembers, such as crane operation or cooking for the crew performing duties as a cook or a galley hand, was commonly understood to be seaman's work. Thus, the specific

---

[74] Seamen, Black's Law Dictionary (3d ed. 1933).

[75] Seamen, Webster's New International Dictionary of the English Language (2d ed. 1934).

[76] Seamen, Oxford English Dictionary, vol. IX, p. 329 (1st ed. rev. 1933).

[77] 17 Stat. 277, § 65 (1872).

[78] 153 F.2d at 198.

15

amount of time spent on any single task was irrelevant, as "the field of work and the job as a whole" defined their status as seamen.[79]

The FLSA did not initially exempt seaman from its overtime pay requirements.[80] The exemption was not added until after maritime labor organizations advocated for its inclusion in the Act.[81] These groups rationalized that seamen's interests were already protected by the Merchant Marine Act of 1936,[82] such that including them in the FLSA's overtime provisions would create unnecessary confusion in labor relations.[83] Congress responded by exempting those "employed as seaman"[84] and, with the Merchant Marine Act of 1936 in mind, deliberately used the broad term "seaman" to capture the full scope of maritime work.[85] The Supreme Court echoed this "broad" understanding of "seamen" in *Norton v. Warner Co.*, stating that "every one is entitled to the privilege of a seaman who, like seamen, at all times contribute to the labor about the operation and welfare of the ship when she is upon a voyage."[86] The contemporary definitions, legislative history, and judicial history thus confirms that Congress intended the exemption to apply broadly to all maritime workers on vessels.

---

[79] *Rest. L. Ctr.*, 120 F.4th at 172.

[80] *Walling v. Bay State Dredging & Contracting Co.*, 149 F.2d 346, 349 (1st Cir. 1945).

[81] *Id.* at 349–50.

[82] *Id.* (citing 49 Stat. 1985).

[83] *Id.*

[84] *Id.*

[85] *Id.*; *see also Walling*, 153 F.2d at 198.

[86] 321 U.S. 565, 572 (1944) (quoting *The Buena Ventura*, 243 F. 797, 799 (S.D.N.Y. 1916)). *Norton* also noted the "seaman" may in fact "have a broader meaning than 'crew.'" *Id.* at 572 n.5; *cf. Int'l Stevedoring Co. v. Haverty*, 272 U.S. 50, 52 (1926) ("[A] wider scope should be given to the words of the act, and that in this statute 'seamen' is to be taken to include stevedores employed in maritime work on navigable waters[.]"), *superseded by statute*, Longshore & Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950; *Carumbo v. Cape Cod S.S. Co.*, 123 F.2d 991, 995 (1st Cir. 1941) (applying a broad definition "to hold that one who does any sort of work aboard a ship in navigation is a 'seaman' within the meaning of the Jones Act").

The DOL's rigid 20% rule stands in direct conflict with this weight of authority. In 1938, "seaman" was understood to include anyone engaged in the navigation or operation of a vessel, not just those performing a narrowly defined set of duties for a specific period of time. As *Restaurant Law Center* explained, statutory terms like "engaged in an occupation" or "employed as a seaman" are best understood by looking at the employee's overall field of work, not a "granular" examination of discrete tasks or duties.[87] Applying this reasoning, the DOL's 20% rule—which excludes employees from the seaman exemption if they spend more than 20% of their time on tasks the same rule defines as non-seaman work—contradicts both the FLSA's statutory text and the exemption's historical context. Just as the Fifth Circuit rejected the fragmentation of tipped occupations into isolated activities, so too should the analysis of the seaman exemption focus on the employee's overall employment aboard the vessel.[88] Congress intended a broad exemption for all seamen, recognizing the unique nature of maritime work and the impracticality of policing minute distinctions between tasks at sea. The DOL's approach, by contrast, imposes arbitrary limitations and undermines the comprehensive exemption Congress provided for those employed as seamen under the FLSA.

> **D.    Crane operators, galley hands, and cooks on liftboats are seaman under the FLSA because their work is critical to the mission, transportation function, and seaworthiness of the liftboats.**

A liftboat is an "offshore supply vessel with moveable legs capable of raising its hull above the surface of the sea."[89] They are considered "vessels" in navigable water, even when in the jacked-up position.[90] When the liftboat is jacked up, the crewmembers retain responsibility for standing

---

[87] *Rest. L. Ctr.*, 120 F.4th at 173.

[88] *See id.* at 172 n.8 ("That § 203(t)'s use of the term 'occupation' refers to individual discrete activities, rather than to the job as a whole is, we think, highly unlikely.").

[89] 46 C.F.R. § 90.10–20.

[90] *Strong v. B.P. Expl. & Prod., Inc.*, 440 F.3d 665, 669 (5th Cir. 2006).

lookout, checking the engine room, splicing rope, cleaning, and performing other quintessential seaman's work.[91] Moreover, Alliance employees are required to ensure that:

> All vessels when at anchor will have a means of checking position to ensure the swing of a vessel at anchor has not changed. Have a radar operational and radio watch in place to warn or communicate with approaching traffic and to keep in contact with the customer. The changes in tide and water depth should be taken into account at all times when mooring at or near any dock or platform.[92]

Moreover, before the jacking system may be engaged, employees must "maintain proper control of the helm and give full consideration to . . . [l]ight conditions, visibility, and proximity of any navigational hazards, pipelines, electrical lines, bottom configuration, existing spud can holes and leg penetration considerations," and must "[m]ake certain it is possible to maintain manual control of the vessel when needed at all times, before attempting to jack down, jack up or depart any location."[93]

As is the case for all commercial vessels, a significant number of Coast Guard regulations governs liftboats.[94] Indeed, Alliance complies with all mandatory preload procedures specified in the Coast Guard's approved Vessel Specific Orientation Manual.[95] "With their legs precariously planted hundreds of feet down on the soft seabed, the liftboats' stability is a matter of paramount importance to avoid capsizing or experiencing uncontrolled descent' from the jacked-up position, a hazard that can occur from mechanical failures or unbalanced loads on deck."[96] Before making any

---

[91] **Exhibit 1** (Chiasson Decl.), at ¶ 14.

[92] **Exhibit 2** (Alliance SOPs), at 47 (ALLIANCE_00495).

[93] **Exhibit 2** (Alliance SOPs), at 73 (ALLIANCE_00521).

[94] *See, e.g.*, 46 C.F.R. §§ 134.100–134.180.

[95] **Exhibit 2** (Alliance SOPs), at 73 (ALLIANCE_00521) (citing 46 C.F.R. 134.170); **Exhibit 2** (Alliance SOPs), at 91 (ALLIANCE_00539) (citing 46 C.F.R. 134.170).

[96] *Adams*, 15 F.4th at 378 (citing 46 C.F.R. § 134.150) (Jones, J., dissenting); *see* **Exhibit 2** (Alliance SOPs), at 112 (ALLIANCE_00560) (employees must "[e]nsure stability of vessel is maintained at all times.").

cargo transfers using the crane, Defendant's employees must "[e]valuate weather, forecasts and conditions that may arise, causing concern to those personnel loading or offloading cargo," and "how any cargo will affect the vessel's trim and stability."[97]

Crew safety is also critical, as the loss or incapacitation of a single crewmember may render the vessel unable to move according to Coast Guard regulations.[98] Crane operators, galley hands, and cooks on liftboats qualify as seamen under the FLSA because their work is integral to the mission, transportation function, operation, and seaworthiness of Defendant's liftboats. On this front, the Fifth Circuit's analysis in *Coffin v. Blessey Marine Services, Inc.* is instructive.[99] There, the court held that tankermen who "ate, slept, lived, and worked" aboard vessels, answered to the captain, and performed duties essential to the vessel's operation—including loading and unloading—were seamen because their work aided the vessel's transportation mission.[100] *Coffin* properly emphasized that courts should consider a vessel employee's overall duties and contributions to the vessel's operation, rather than isolating specific activities. Thus, even if the employees perform crane operations when the liftboat is preparing to leave port or after it arrives in port, those employees nevertheless remain engaged in their work as seamen who are exempt seamen.[101]

Applying this reasoning, evidence shows that those employed aboard Defendant's liftboats—including those whose duties include cooking and/or operating the crane—fall squarely within the FLSA's broad seaman exemption. As in *Coffin*, Defendant's vessel-based crane operators

---

[97] **Exhibit 2** (Alliance SOPs), at 92 (ALLIANCE_00540).

[98] *See* 46 C.F.R. § 15.501.

[99] 771 F.3d 276.

[100] *Id.* at 282.

[101] *See, e.g.*, *Coffin*, 771 F.3d at 282–84 (holding that vessel-based tankermen were employed as seamen when their duties included loading and unloading the barges, a task integrally connected to the barge's seaworthiness).

19

performed their loading and unloading duties with an eye toward their transportation mission and were required to perform such duties safely so that the vessel could safely operate on navigable waters.[102] These crane operators are assigned as crewmembers to the liftboats, are subject to the direct supervision of the vessel's captain, and both live and work aboard the vessel for the duration of their assignments.[103] Their primary responsibilities—operating cranes and assisting with other tasks assigned by the vessel's Captain—are not peripheral, but central to the vessel's mission, transportation function, and seaworthiness.[104] Those whose duties include operating cranes, for example, are responsible for moving personnel and cargo between the vessel and docks, worksites, other vessels, and within the vessel itself.[105] These activities are performed in close coordination with the vessel's operational needs and are critical to its ability to transport people and equipment safely on navigable waters.[106]

The reasoning in *Johnson v. Canal Barge Co.* further supports this conclusion.[107] There, applying *Coffin*, the court ruled that vessel-based tankermen who managed cargo transfers and moorings were seamen because their integrated duties ensured the vessel's seaworthiness and "the safe positioning of the vessel upon which he was a crew member."[108] During loading and unloading, the tankermen were "responsible for handling and monitoring all of the moorings of the barge,

---

[102] *Id.* at 284.

[103] **Exhibit 1** (Chiasson Decl.), at ¶¶ 4–5.

[104] **Exhibit 1** (Chiasson Decl.), at ¶ 12.

[105] **Exhibit 1** (Chiasson Decl.), at ¶ 13. Indeed, before transferring personnel using the crane, personnel baskets must be lifted high enough off the deck to safely clear obstructions before swinging personal out over the water. **Exhibit 2** (Alliance SOPs), at 83 (ALLIANCE_00531). Personnel should be lifted over the water and swung in a manner that will minimize any swinging, never raised or lowered directly over a vessel. *Id.* The people being moved must don a personal flotation devise. *Id.*

[106] **Exhibit 1** (Chiasson Decl.), at ¶ 13.

[107] 181 F. Supp. 3d 413 (S.D. Tex. 2016).

[108] *Id.* at 419.

20

adjusting the lines as needed to accommodate the shifting position of the vessel, and anticipating boat traffic and its accompanying wake against the barge."[109] Moreover, despite the "tankering duties" being the "primary duties," the tankermen did not dispute that they were "member[s] of the vessel's crew and assigned deckhand responsibilities."[110] *Johnson* found that, regardless of how much time was spent on any particular activity, the tankermen's overall role as crewmembers made them seamen under the FLSA.[111]

Similarly, Defendant's crane operators are fully integrated into the crew and perform essential work that supports the vessel's mission as a means of transportation and likewise ensure the vessel's safe mooring and stability while the crane is engaged. Although there is no one employee whose sole job is to operate the crane,[112] each employee whose duties include using the vessel's crane is answerable to the vessel's captain.[113] Each employee whose duties include using the vessel's crane is assigned to a liftboat as a crewmember.[114] Each employee whose duties include using the vessel's crane ate and slept aboard the vessel.[115] Employees whose duties include using the vessel's crane perform other duties the captain assigns to them *in addition* to operating the crane.[116]

Crewmembers are responsible for "maintain[ing] [the] structural integrity of the [liftboat's] legs that are relied on for stability," being that the legs on all jack-up vessels "are extremely vital to the vessels ability to remain erect while they are in the elevated position above the ocean floor."[117]

---

[109] *Id.*

[110] *Id.*

[111] *Id.* at 419–20.

[112] **Exhibit 1** (Chiasson Decl.), at ¶ 11.

[113] **Exhibit 1** (Chiasson Decl.), at ¶ 6.

[114] **Exhibit 1** (Chiasson Decl.), at ¶ 4.

[115] **Exhibit 1** (Chiasson Decl.), at ¶ 5.

[116] **Exhibit 1** (Chiasson Decl.), at ¶ 10.

[117] **Exhibit 2** (Alliance SOPs), at 109 (ALLIANCE_00557).

Thus, when operating the vessel, crewmembers must "identify all potentially hazardous conditions, especially those situations that may occur where catastrophic damage may occur to a jack up vessel."[118] Moreover, Alliance employees are required to ensure that "[t]he changes in tide and water depth [are] taken into account at all times when mooring at or near any dock or platform."[119] And, finally, the cranes transported people and equipment between the vessel and the dock, the vessel and the worksite, the vessel and other vessels, and within the vessel itself.[120] This type of work is hazardous and thus is subject to multiple vessel safety regulations.[121]

There is no meaningful distinction between the work performed by crane operators and that of other crewmembers who plainly qualify as seamen. As the district court in *Johnson* recognized, the key inquiry is whether the employment as a whole "is rendered primarily as an aid in the operation of such vessel as a means of transportation."[122] Because the work of crane operators and other crewmembers aboard Defendant's liftboats is dedicated to this purpose, they are properly classified as seamen under the FLSA, and the DOL's 20% rule cannot override this broad statutory exemption.

The same analysis applies to those liftboat employees whose duties include cooking. Cooks are seamen under the FLSA because they always cook for seamen, live onboard, answer to the captain, and aid in operation of the vessel. The Fifth Circuit has long recognized that a "cook is usually a seaman because he usually cooks *for* seamen."[123] Cooks are treated "[l]ike any other crew

---

[118] **Exhibit 2** (Alliance SOPs), at 109 (ALLIANCE_00557).

[119] **Exhibit 2** (Alliance SOPs), at 47 (ALLIANCE_00495).

[120] **Exhibit 1** (Chiasson Decl.), at ¶ 13.

[121] *Adams*, 15 F.4th at 378 ("As is the case for all commercial vessels, a raft of Coast Guard regulations governs liftboats.") (Jones, J., dissenting)).

[122] *Johnson*, 181 F. Supp. 3d at 416.

[123] *Martin v. Bedell*, 955 F.2d 1029, 1036 (5th Cir. 1992); *see also Coffin*, 771 F.3d at 283; *Adams*, 15 F.4th at 376.

22

member" because they are permanent members of the vessel's crew, live and work aboard the vessel, answer to the captain, and their primary responsibility—feeding the crew—is essential to the vessel's operation.[124] The evidence confirms that Defendant's cooks prepared meals for other crewmembers, were subject to the captain's authority, and were, by definition, direct employees of Alliance Liftboats.[125]

Even if non-crewmembers also consumed meals, this was merely incidental to the cooks' primary duty of feeding the crew. As *Coffin* held, a crewmember does not lose seaman status "simply because, as an incident to such employment, he performs some work not connected with operation of the vessel as a means of transportation."[126] It is "obvious" that the primary duty of a cook to prepare meals for seamen is to "provide essential aid in the operation of the vessel by keeping the rest of the crew fed."[127] The DOL's own regulations recognize that cooks, as "members of the crew" and who prepare meals for the crew, are performing duties that aid the operation of the vessel as a means of transportation.[128] To require the court and employers to parse out who else might also consume the meals prepared by these crewmembers on a hitch-by-hitch or week-by-week basis as the DOL's 20% rule arbitrarily suggests cuts directly against the exemption's plain language, the Act's original broadly sweeping intent, and the Fifth Circuit's holding in *Restaurant Law Center*.

---

[124] *Adams*, 15 F.4th at 376 (citation omitted); *McLaughlin v. Harbor Cruises LLC*, 880 F. Supp. 2d 179, 187 (D. Mass. 2012) ("[A] ship's cook can provide essential aid in the operation of the vessel by keeping the rest of the crew fed. The fact that cooking can also be land-based work does not alter this fact.").

[125] **Exhibit 1** (Chiasson Decl.), at ¶¶ 6, 8–9.

[126] 771 F.3d at 283.

[127] *McLaughlin*, 880 F. Supp. 2d at 187.

[128] *Coffin*, 771 F.3d at 283 (quoting 29 C.F.R. § 783.32).

PD.49376439.3

"The crane operations are a *sine qua non* of the liftboat's function as a means of transportation; without the cranes, the liftboat serves no transportive purpose."[129] Indeed, before departing, Defendant's employees must ensure that "[a]ll cargo [is] properly positioned, lashed and tensioned to prevent shifting while the vessel is at sea."[130] And even when the liftboat is jacked up, the crewmembers continue to have seaman responsibilities other than their crane work."[131] The DOL's regulatory framework's "piecemeal treatment of [a liftboat crewmember's] duties ignores the intimate connection between the crane work and the liftboats' purpose as a means of transportation."[132] Thus, properly applying the "ordinary meaning" of the phrase "employed as a seamen" to the instant dispute, as *Loper Bright* and *Restaurant Law Center* require, Plaintiff in this case as well as those he seeks to represent "are articled seamen, undertaking voyages at the captain's command, and responsible for the vessel, their duties manifestly include the vessel's safe operation when discharging cargo or personnel, regardless [of] whether the liftboat is positioned on the seabed or moored near the receiving platform."[133]

Accordingly, under the plain terms of the FLSA and the undisputed facts, Defendant's employees who work aboard its vessels—including crane operators, galley hands, and cooks—are exempt seamen. They live and work aboard the vessels, are subject to the captain's authority, and perform duties that directly support the vessel's operation and transportation mission. The FLSA overtime exemption for seamen therefore applies to these positions.

---

[129] *Adams*, 15 F.4th at 380 (Jones, J., dissenting).

[130] **Exhibit 2** (Alliance SOPs), at 93 (ALLIANCE_00541).

[131] *Adams*, 15 F.4th at 380 (Jones, J., dissenting).

[132] *Id.* at 380 (Jones, J., dissenting).

[133] *Id.* at 380–81 (Jones, J., dissenting).

IV.    **CONCLUSION**

For the foregoing reasons, Defendant Alliance Liftboats, LLC respectfully requests that the Court grant summary judgment in its favor on all claims. Because the DOL's 20% rule contradicts the plain statutory language and is no longer controlling after *Loper Bright*, and because the undisputed facts demonstrate that Plaintiff and all other liftboat crewmembers aboard Defendant's vessels are "employed as seamen" under the ordinary meaning of the FLSA, there is no genuine dispute of fact, and Plaintiff's claims for overtime pay should be dismissed with prejudice.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____
David M. Korn (Bar #21676)
Stephanie M. Poucher (Bar #37263)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email:  kornd@phelps.com
          pouchers@phelps.com

**ATTORNEYS FOR DEFENDANT**

PD.49376439.3