## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PATRICK BREAUX,**                                    **CIVIL ACTION**
        **Plaintiff**

**VERSUS**                                            **NO. 24-1000**

**ALLIANCE LIFTBOATS, LLC, ET AL.,**                  **SECTION: "E" (4)**
        **Defendants**

### ORDER AND REASONS

Before the Court is a motion to certify collective action by Plaintiff Patrick Breaux ("Plaintiff").[1] Defendant Alliance Liftboats, LLC ("Defendant" or "Alliance") opposes.[2] Plaintiff filed a reply.[3] The Court held oral argument on the instant motion on August 20 and August 29, 2025.[4] The Plaintiff filed supplemental memorandums following oral argument,[5] as did the Defendant.[6]

### BACKGROUND

On April 19, 2024, Plaintiff filed this suit to recover unpaid overtime wages from Defendant Alliance and against the Defendant L/B MIAMI in rem under the Fair Labor Standards Act ("FLSA").[7] Plaintiff alleges he worked as a cook aboard the L/B MIAMI for the past three years.[8] As a cook, Plaintiff alleges he "was paid a day rate," regardless of the number of hours he worked in a week.[9] Plaintiff alleges that he "regularly worked over 40

---

[1] R. Doc. 19.
[2] R. Doc. 23.
[3] R. Doc. 26.
[4] R. Doc. 30.
[5] R. Docs. 33 and 35.
[6] R. Docs. 34 and 36.
[7] R. Doc. 1.
[8] *Id.* at ¶ 26.
[9] *Id.* at ¶ 5.

hours in a week."[10] Plaintiff alleges Defendant misclassified him as exempt from state and federal overtime law and did not pay him overtime wages.[11]

Plaintiff seeks to have the Court certify a collective action.[12] Pursuant to the United States Court of Appeals for the Fifth Circuit's opinion in *Swales v. KLLM Transport Services*, the Court authorized preliminary discovery.[13] Under binding Fifth Circuit precedent, in a collective action case, "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly."[14] In compliance with this dictate, this Court authorized

> discovery on the identity of those individuals working on Alliance liftboats, either as cooks, crane operators or other employees, and the nature of their work performed, in the time period subject to the FLSA: 2021, 2022, 2023, and 2024, including written discovery such as individual payroll/income records for the Alliance employees, job descriptions, and the production of documents such as vessel logs, persons on board logs, daily work logs, as well as other similar documentation needed to show what work Alliance employees assigned to Alliance liftboats were doing and when and what the status of the vessels was during those times.[15]

This discovery having been completed, at least partially,[16] Plaintiff brings this present motion, seeking to have a collective defined as follows:

> All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions and crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for

---

[10] *Id.* at ¶¶ 6, 29.
[11] *Id.* at ¶¶ 8, 30-32.
[12] R. Doc. 19.
[13] 985 F.3d 430 (5th Cir. 2021); R. Doc. 13.
[14] *Swales*, 985 F.3d at 441.
[15] R. Doc. 13.
[16] Defendant objected to Plaintiff's requests for production of documents as overbroad and irrelevant, and produced only ALLIANCE_000001–002497. R. Doc. 26-1 at pp. 2-3. Attached as Exhibit A to Plaintiff's Motion to Certify Collective Action is a spreadsheet summarizing the documents the Defendant provided. R. Doc. 19-3.

the last three years, whose work did not serve the vessels' operation as a means of transportation, yet were classified as exempt from overtime.[17]

Plaintiff contends he and the putative collective members are similarly situated and the case should proceed as a collective action.[18] Plaintiff did not submit a proposed collective action notice form and, instead, requested twenty-one days to draft and finalize language for the collective action notice form as well as for delivery of notice.[19]

## **LAW**

"The FLSA's baseline requirement is that any employee who works 'longer than forty hours' in a workweek must be compensated 'at a rate not less than one and one-half times the regular rate at which he is employed.'"[20] Under 29 U.S.C. § 216(b), "[a]n action to recover the liability" for an employer's violation of the FLSA's overtime provisions[21] "may be maintained against any employer . . . in any . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." In *Loy v. Rehab Synergies, L.L.C.*, the Fifth Circuit laid out the framework for this Court's § 216(b) analysis of whether employees are similarly situated:

> To decide whether a group of employees is similarly situated, the district court must consider whether merits questions can be answered collectively. After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be similarly situated for purposes of answering the relevant legal questions on the merits. If answering the merits questions requires a highly individualized inquiry into each potential opt-in's circumstances, then the employees are likely not similarly situated. It is the plaintiffs' burden to establish that they are similarly situated.

---

[17] R. Doc. 1 at ¶ 35; R. Doc. 19; R. Doc. 19-1 at pp. 4-5.
[18] R. Doc. 19-1.
[19] *Id.* at p. 20. The Defendant requests 30 days to submit the collective action notice form.
[20] *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 369 (5th Cir. 2021) (quoting 29 U.S.C. § 207(a)(1)).
[21] 29 U.S.C. § 216(b).

Pre-*Swales*, district courts following the *Lusardi* approach considered three factors when deciding whether employees were "similarly situated": (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. While *Swales* rejected *Lusardi*'s two-step method of "conditional certification" and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi*'s second step. That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply: The bottom line is that the district court has broad, litigation-management discretion, cabined by the FLSA's "similarly situated" requirement.[22]

"At the core of the 'similarly situated' inquiry is the question whether the issues in the case can be adjudicated collectively."[23] The Plaintiff has the burden of demonstrating that the employees in the collective class as he defined it are similarly situated.[24] Defendant, as the employer, will have the burden of establishing that the seaman exemption applies by a preponderance of the evidence.[25]

"'Several courts have held that putative class members must show they were affected by a common policy, plan, pattern or practice' to meet the similarly situated requirement."[26] According to those courts, "[t]he key consideration is that to be similarly situated, there must be substantial allegations that potential members were together the victims of a single decision, policy, or plan."[27] "[G]eographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus

---

[22] *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329 (5th Cir. 2023) (cleaned up).
[23] *Hill v. Muscogee Cnty. Sch. Dist.*, No. 03-60, 2005 WL 3526669, at *3 (M.D. Ga. Dec. 20, 2005).
[24] *Loy*, 71 F.4th at 337.
[25] *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020).
[26] *Loy v. Rehab Synergies, LLC*, No. 18-4, 2021 WL 3931926, at *8 (S.D. Tex. Sept. 2, 2021) (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535-36 (S.D. Tex. 2008)).
[27] *Caballero v. Kelly Servs., Inc.*, No. 14-1828, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (internal quotations omitted) (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)).

is on whether the employees were impacted by a common policy."[28] Other courts disagree and find that the presence of a common policy or plan is not a requirement but is good evidence that employees are similarly situated.[29] In either event, the presence of a common policy or practice is helpful in assessing the first factor mentioned in *Swales*, the putative class members' factual and employment settings.[30]

While it is best practice for an employer to maintain a written policy and to enforce that written policy,[31] a written policy's existence is not dispositive of a court's similarly situated analysis.[32] For example, an employer may have a written policy in place that is compliant with the law, but countervailing evidence may show that the employer does not follow this policy. In such a case, the fact that the employer maintained a written policy would not prevent a court from finding that a group of employees is similarly situated if there is countervailing evidence that the employer violates its policy in a manner that leads to FLSA liability.[33]

Likewise, the absence of a written policy does not necessarily show that the employer does not enforce an unwritten policy against its employees that violates the

---

[28] *Loy*, 2021 WL 3931926, at *8 (quoting *Vargas v. Richardson Trident Co.*, No. 09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010)).

[29] *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149 (S. D. Tex. Dec. 11, 2008).

[30] *Falcon*, 580 F. Supp. 2d at 535.

[31] Alan Bush & Lee Winkelman, *Off-the-Clock Overtime Pay Class Lawsuits: It Only Takes One (Disgruntled Ex-Employee)*, 35 CORP. COUNS. REV. 133, 147 (2016) (discussing how an overtime pay policy should be written and what an overtime pay policy should include).

[32] *Richardson v. Wells Fargo Bank, N.A.*, No. 11-738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) (citation omitted) (citing *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008)) ("Although written policies are not dispositive that an actual plan or practice exists, written policies are relevant considerations when assessing workers' arguments about the existence of a company-wide policy."); *Russell*, 575 F. Supp. 2d at 935 (citing B*urch v. Quest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007)) ("[T]he mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime.").

[33] *See Richardson*, 2012 WL 334038, at *4 (citing *Russell*, 575 F. Supp. 2d at 935); *Russell*, 575 F. Supp. 2d at 935 (citing B*urch*, 500 F. Supp. 2d at 1188).

FLSA.[34] For example, in an FLSA collective action case, an employer may argue that it does not have a policy that commonly applies to its employees because it has no written policy. However, if the evidence reveals that the employer adheres to an unwritten policy, and that unwritten policy violates the employees' rights under the FLSA, then a court should certify the proposed collective action because the employees are subject to a common policy.[35]

The fact that members of the putative collective class work in different facilities or have different job titles does not preclude a finding that they are similarly situated. "Therefore, even when potential members' work settings differ, this circumstance will not weigh against a finding of sufficient similarity unless liability turns on those differences.[36] Similarly situated plaintiffs need not be identical. In *Torres v. Chambers Protective Services, Inc.*, the United States District Court for the Northern District of Texas held the fact that the employees "have different supervisors, work on different teams, have some varying job duties, and work in different locations" did not prevent a finding that they were similarly situated.[37] The court reasoned "these differences are separate from the alleged unlawful practice—failure to pay overtime wages"—because "none of these differences diminish [the plaintiff's] evidence" of the alleged unlawful practice.[38] Similarly, in *Loy v. Rehab Synergies, LLC*, the United States District Court for the Southern District of Texas held the fact that the purported collective action members

---

[34] *Richardson*, 2012 WL 334038, at *4 (citing *Russell*, 575 F. Supp. 2d at 935); *Russell*, 575 F. Supp. 2d at 935 (citing *B*urch, 500 F. Supp. 2d at 1188).

[35] *Richardson*, 2012 WL 334038, at *4 (citing *Russell*, 575 F. Supp. 2d at 935); *Russell*, 575 F. Supp. 2d at 935 (citing *B*urch, 500 F. Supp. 2d at 1188); *Caballero*, 2015 WL 12732863, at *3 (quoting *McKnight*, 756 F. Supp. 2d at 801); *Loy*, 2021 WL 3931926, at *8.

[36] *Spillers v. Louisiana PHS, LLC*, 2022 WL 1675950 (W.D. La. May 10, 2022).

[37] *See, e.g.*, *Torres*, 2021 WL 3419705, at *6; *Loy*, 2021 WL 3931926, at *11.

[38] *Torres, 2021 WL 3419705 at * 4.*

"'worked in five different job titles, reporting to different managers at different facilities at different times within the last six years;' worked different schedules; [and] had different 'productivity requirements'" did not preclude a finding that they were similarly situated because these differences were "not material to the merits questions in this case."[39]

The defendant's assertion of defenses that are inapplicable to the entire collective and vary from employee to employee does not prevent a finding that the members of the class are similarly situated.[40] Instead, the Court must consider whether the defenses are so individualized that collective adjudication is unworkable.[41] Such defenses can be adequately raised at a trial involving representative testimony. Representative testimony is particularly worthwhile in cases in which the defendant has inadequate record keeping, such as in this case.[42] "When a defendant in a suit for lost wages under the FLSA fails to maintain employment records as required by the Act, an employee (or the Secretary on behalf of a group of employees: may 'submit sufficient evidence from which violation of the Act and the amount of an award may be reasonably inferred.'"[43] "[S]tanding alone, the prospect of individual defenses should not defeat authorization of a collective action."[44]

---

[39] *Loy*, 2021 WL 3931926, at *11 (footnote and quotations omitted).
[40] *See Valdery-Hughes v. Care & Dev. Ctr., Inc.*, No. 24-1708, 2025 WL 1068258, at *6 (E.D. La. Apr. 9, 2025).
[41] *See Falcon*, 580 F. Supp. 2d at 540-41.
[42] *Reich v. Southern New Engeland Telecom.*, 121 F.3d 58, 66-67 (2nd Cir. 1997).
[43] *Id.*
[44] *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) (citing *Hyman v. First Union Corp.*, 982 F. Supp. 1, 5 (D.D.C. 1997)).

Fairness and procedural concerns favor certification of a collective action if certification would promote "the FLSA's objectives with regard to collective actions."[45] The FLSA's objectives include "lowering the costs of plaintiffs through aggregation and consolidating common issues of law and fact arising from the same alleged activity."[46] "[P]laintiffs can 'hardly be expected to pursue . . . small claims individually . . . ."[47] Collective actions enable similarly situated plaintiffs to pursue their small claims together and at a lower cost.[48] Additionally, judicial economy favors certification of a collective action if the putative collective's members have similar claims because collective adjudication avoids duplicative trials.[49] Courts should also consider that the "FLSA is a remedial statute that has been construed liberally to apply to the furthest reaches consistent with congressional direction."[50]

## ANALYSIS

### I.    The putative collective members are subject to a uniform policy or practice classifying them as FLSA-exempt seaman not entitled to overtime pay.

To meet his burden of establishing that the members of the proposed collective action are similarly situated, Plaintiff points to Defendant's alleged policy of classifying all of its liftboat employees on all nine of its liftboats as FLSA-exempt seaman rendering a service that was primarily an aid in the operation of such vessel as a means of

---

[45] *Ebbs v. Orleans Par. Sch. Bd.*, No. 04-1198, 2014 WL 12717703, at *4 (E.D. La. Mar. 31, 2014) (citing *Johnson v. TGF Precision Haircutters, Inc.*, No. 03-3641, 2005 WL 1994286, at *7 (S.D. Tex. Aug. 17, 2005)).

[46] *Id.* (citing *Johnson*, 2005 WL 1994286, at *7).

[47] *Falcon*, 580 F. Supp. 2d at 541 (first citing *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002); then *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1363 (S.D. Fla. 2007)).

[48] *Id.* (first citing *Bradford*, 184 F. Supp. 2d at 1351; then *Pendlebury*, 518 F. Supp. 2d at 1363).

[49] *Id.* (first citing *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); then *Prickett*, 349 F.3d at 1296.

[50] *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1296 (11th Cir. 2003) (internal quotations omitted) (quoting *Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1182 (11th Cir. 1983)).

transportation, without regard to whether they performed a substantial amount of work of a different character.[51] A seaman does not lose seaman status, for FLSA purposes, because he performs some work not connected with the operation of the vessel as a means of transportation. Such differing work is substantial if it occupies more 20 percent of the time worked by the employee during a workweek.[52] Plaintiff submits that Defendant "assumed its crewmembers were FLSA-exempt" and accordingly "issued a blanket policy not to pay overtime."[53] Plaintiff claims the proposed collective is comprised of "similarly situated" individuals "because [Defendant] treated [the proposed collective] as exempt seaman without reference to the Department of Labor regulations, and without reference to *Adams v. All Coast*, [*L.L.C.*] or *Wallin* [*v. W. D. Haden Co.*], or the Code of Federal Regulations."[54]

In opposition, Defendant argues Plaintiff has not carried his burden of showing that the proposed collective is comprised of similarly situated individuals because Plaintiff has not come forward with evidence of a blanket policy.[55] Instead, Defendant argues Plaintiff relies on an "absence of evidence" to substantiate his claim.[56] Defendant further argues Plaintiff has not produced sufficient evidence of (1) how his experience as a cook is comparable to the other jobs listed in the proposed collective definition, or (2) how his experience aboard the L/B MIAMI is representative of Defendant's other liftboats listed in the proposed collective definition.[57] With respect to the individuals who would

---

[51] R. Doc. 19-1 at p. 5. *See* 29 C.F.R. § 783.31 which provides criteria for employment "as a seaman" under the FLSA.
[52] 29 C.F.R. . § 783.37.
[53] R. Doc. 19-1 at p. 18.
[54] *Id.* (first citing *Adams*, 15 F.4th 365; then *Walling v. W. D. Haden Co.*, 153 F.2d 196 (5th Cir. 1946)).
[55] R. Doc. 23 at pp. 9-10.
[56] *Id.* at p. 9.
[57] *Id.* at pp. 10-14.

be included in Plaintiff's proposed collective definition, and the various liftboats, Defendant argues the different job titles and the liftboats all are dissimilar.[58]

As part of the preliminary discovery in this case, the Court specifically authorized discovery as to "the identity of those individuals working on Alliance liftboats, . . . the nature of their work performed, . . . payroll/income records, . . . job descriptions, . . . daily work logs, as well as other similar documentation needed to show what work Alliance employees assigned to Alliance liftboats were doing."[59] Accordingly, Plaintiff served Defendant with a request for production of documents requesting:

a. The identity of crewmembers on Alliance liftboats, including their job title and job responsibilities;

b. The job description of any crewmembers;

c. The actual work performed by crewmembers;

d. The payment structure – including whether paid by day rate and how much paid – for crewmembers.[60]

Plaintiff requested this information for individuals employed as "crewmembers" on liftboats from April 22, 2021 through the date Plaintiff served his request for production of documents.[61]

Defendant objected to Plaintiff's requests for production of documents and produced  only ALLIANCE_000001–002497.[62] Specifically, Defendant objected to the request as overbroad and irrelevant,[63] even though this is the discovery the Court had authorized.[64] Defendant represented that, subject to its objections, it would "search for

---

[58] *Id.* at pp. 14-16.
[59] R. Doc. 13.
[60] R. Doc. 26-1 at p. 2.
[61] *Id.*
[62] R. Doc. 26-1 at pp. 2-3.
[63] *Id.* at pp. 2-3.
[64] R. Doc. 13.

and produce, if located, any workflow chart(s), standard employment agreement(s), or job manual(s); employee handbook(s) that tend to show the job description of any crewmembers; the actual work performed by crewmembers; and the payment structure for Defendant's crewmembers."[65] Defendant then stated, "[a]ccordingly, please see ALLIANCE_000001–002497."[66] No party has identified any documents produced subsequent to the Defendant's original answer to the discovery, and the Court assumes there were none.

Although the Court does not have access to the entirety of "ALLIANCE_000001–002497," Defendant did file ALLIANCE_000449–000714 on the record as an exhibit to its motion for summary judgment.[67] This portion of the production is entitled "Standard Operating Procedures."[68] The Court's review of the table of contents for Defendant's Standard Operating Procedures reflects no Standard Operating Procedure on the topic of overtime payment.[69] Neither did the Court find a written policy on overtime payment in its search of the body of the document.[70]

In fact, Defendant has now confirmed that it does not have a written policy regarding payment of overtime.[71] The absence of a written policy does not necessarily show that the employer does not enforce an unwritten policy that violates the FLSA. Defendant admitted its cooks sometimes are not paid overtime for hours worked in excess of forty hours a week.[72] At the oral argument on August 29, 2025, the Court directed

---

[65] R. Doc. 26-1 at p. 3.
[66] *Id.*
[67] R. Doc. 20-4.
[68] *Id.* at p. 1.
[69] R. Doc. 20-4.
[70] *Id.*
[71] R. Doc. 32 at p. 2.
[72] R. Doc. 32 at pp. 2-3. Even if some cooks were sometimes paid overtime, this does not defeat a finding that the putative collective members are similarly situated, given the fact that not all of the cooks were paid overtime for all of the hours they worked in excess of 40. *Falcon*, 580 F. Supp. 2d at 536-37.

Defendant to confirm in its supplemental memorandum whether it pays overtime to any of the following categories of liftboat employees: crane operators, masters, mates, engineers, captains, first mates,[73] qualified members of the engine department ("QMED"), able-bodied Jones Act seaman ("AS"), and ordinary Jones Act seaman ("OS").[74] Rather than directly responding to the Court's directive, the Defendant apparently attempted to clarify its position on pay in its Supplemental Opposition to Motion to Certify saying that "other liftboat employees *could* receive additional pay, identified as 'OT-AIV' on their paystubs, when the customer requests additional services be performed, referred to as 'extended services.' These amounts were paid by the customer. Comparatively, those serving as cooks aboard a liftboat may earn additional pay when they perform work beyond their scheduled work shift." [75] The Defendant explains that "OT-AIV" is "additional pay," and does not represent that it is the same as overtime pay.[76] The Court takes this as confirmation that the Defendant did not pay overtime to any of the categories of liftboat employees listed above. [77]

As part of the preliminary discovery in this case, the Court specifically authorized discovery as to "the identity of those individuals working on Alliance liftboats, . . . the nature of their work performed, . . . payroll/income records, . . . job descriptions, . . . daily work logs, as well as other similar documentation needed to show what work Alliance

---

[73] Defendant confirmed that it employs first mates on its liftboats. R. Doc. 34 at n. 29.

[74] R. Doc. 32.

[75] R. Doc. 34 at n. 13. It is unclear to the Court what the Defendant means by saying the other liftboat employees could receive "additional pay" paid by the customer and cooks may earn "additional pay" when they perform work beyond their scheduled work shift. Does the Defendant pay its liftboat employees overtime wages? The Court concludes it does not.

[76] *Id.*

[77] In its Memorandum in Opposition to Plaintiff's Motion to Certify Collective Action, the Defendant argues that the Plaintiff was paid overtime and is not even a member of the collective he seeks to represent. R. Doc. 23 at p. 2. Subsequent representations by Defendant's counsel at the oral argument on August 29, 2025 and in R. Doc. 34 are contrary to this argument.

employees assigned to Alliance liftboats were doing." Defendant failed to respond to Plaintiff's discovery requests seeking exactly this information but now argues Plaintiff has not produced sufficient evidence of (1) how his experience as a cook is comparable to the other jobs listed in the proposed collective definition, and (2) how his experience aboard the L/B MIAMI is representative of Defendant's other liftboats listed in the proposed collective definition.[78]

Plaintiff highlights the irony of Defendant's argument that Plaintiff has not produced enough evidence of how his work as a cook is comparable to the other jobs listed in the collective definition. Plaintiff points out that Defendant categorized its employees based on their titles – captain, mate, ordinary seaman, able-bodied seaman, cook, QMED and engineer. Plaintiff further argues that, regardless of the title, Defendant paid each of those employees a day rate without overtime; Defendant did not track what portion of each employee's work was spent aiding in navigating the vessel; Defendant performed no calculation to determine whether its liftboat employees were exempt from the FLSA's overtime requirement; and Defendant kept no crane logs, kitchen logs or any other piece of paper that would show what work was being done by which employee to establish that an employee was or was not covered by the seamen's work exception.[79] Instead, Plaintiff argues, Defendant only has logs indicating the personnel on board the vessel, the vessel's location and generally what the vessel was doing that day. Defendant argues the logs show that rarely and briefly do Defendant's liftboats enter navigation: they spend the profound majority of their time (around 65%) jacked, working at a platform; less time (around 20%)

---

[78] Defendant obfuscated rather than answer the discovery authorized by the Court for it to be able to determine whether the members are similarly situated. The Court interprets the Defendant's obfuscation as confirmation that it considered all liftboat employees to be FLSA-exempt seamen not entitled to overtime.

[79] R. Doc. 19-1 at pp. 14-16.

on standby either at the platform or at dock, and less time (around 15%) in navigation or preparing to navigate (including jacking up and jacking down).[80] Although the analysis of similarly situated analysis depends on the character of the work the employee did, not on whether the liftboat was jacked up or not, these logs should prove useful in the analysis of whether the employees were FLSA seamen, particularly when Defendant kept no records that show what work was being done by which employee at what time. "Certainly, [Defendant]'s lack of record keeping is not held against" Plaintiff.[81]

Defendant argues there are differences between the jobs and liftboats listed in the proposed collective definition and that the Plaintiff has "failed to demonstrate that the work he performed as a cook on the L/B MIAMI is representative of the work performed by cooks on any other vessel, let alone every single one of Alliance's seagoing employees."[82] According to the declaration of Jared Chaisson,[83] the Defendant has nine liftboats in its fleet servicing various platforms or rigs in the Gulf, traveling from location to location and transporting cargo between the vessel and other platforms, docks, and vessels. The liftboat may or may not have third-party contractors on board. The liftboats have different manning needs and maximum capacities.[84] The duties of Defendant's licensed mariners (all employees other than deckhands) may change from hitch to hitch depending on the vessel to which they are assigned and the type of vessel to which they

---

[80] R. Doc. 33 at p. 4. In response to the Court's Order directing the Defendant to "verify the veracity of Plaintiff's amended Smooth Log Summary and address any impact of the Smooth Log Summary on the Plaintiff's Motion to Certify Collective," the Defendant did attach a vessel log summary and vessel logs to its Supplemental Opposition to the Motion to Certify. R. Docs. 34-2 and 34-3. Defendant confirmed that the Plaintiff's and Defendant's number are largely the same. R. Doc. 34 at n. 15.

[81] *Spillers v. La. PHS, L.L.C.*, No. 21-00762, 2022 WL 1675950, at *8 (W.D. La. May 10, 2022), *R. & R. adopted*, 2022 WL 1664120 (W.D. La. May 25, 2022).

[82] R. Doc. 23 at p. 2.

[83] R. Doc. 23, Exhibit 2.

[84] *Id.*

are assigned may change.[85] Even taking the Chaisson declaration as true, it is not determinative. The fact that employees have varying job duties and work in different locations does not prevent a finding that they are similarly situated.[86] In *Loy v. Rehab Synergies, L.L.C.*, the Fifth Circuit held the fact that the purported collective action members "'worked in five different job titles, reporting to different managers at different facilities at different times within the last six years;' worked different schedules; [and] had different 'productivity requirements'" did not preclude a finding that they were similarly situated because these differences were "not material to the merits questions in this case."[87] Similarly, none of the differences between the job duties and work locations of the putative collective members in this case, all of whom work on liftboats and none of whom is paid overtime, diminish the evidence of the alleged unlawful practice.[88] To hold otherwise would allow employers to avoid a FLSA collective action because a large number of employees, but working on different liftboats, are affected.

The Court also must consider whether the defendant has available defenses that are individual to each member of the putative collective.[89] Defendant argues its employees who serve as masters, mates, and engineers may be eligible for either the executive exemption or the learned professional exemption and that these defenses are unavailable for other members of the proposed collective.[90] While Defendant may have defenses specific only to masters, mates, and engineers, these job positions are not so

---

[85] *Id.*
[86] *Spillers v. Louisiana PHS, LLC,* 2022 WL 1675950 (W.D. La. May 10, 2022).
[87] *Loy*, 71 F.4th 338.
[88] Defendant relies heavily on the fact that the Plaintiff seeks to certify a collective of employees on all the liftboats operated by the Defendant. R. Doc. 23 at p. 13. The variations noted in the duties of the various liftboats may provide a defense with respect to certain members but do not make certification of the collective impractical.
[89] *Loy*, 71 F.4th at 336.
[90] R. Doc. 23 at pp. 20-21.

individualized as to make certification of a collective impractical. "The Court is not convinced that Defendants' defenses are so individualized that collective adjudication of this claim is unworkable. . . . [T]hese defenses can be adequately raised at a trial involving representative testimony."[91] The Defendant will be free to "present evidence of its purported lawful employment practices, to cross-examine representative plaintiffs, and to call others to the stand with material testimony that helps its case."[92] As a result, the availability of the executive exemption or the learned professional exemption as a defense against masters, mates, and engineers does not make collective adjudication unworkable and does not weigh against certification of the collective.

The Defendant argues that any collective certified should include only cooks because Mr. Breaux is a cook.[93] Murray Dorsay, a cook, also filed a notice of consent to participate in the collective action.[94] Matthew Sims, an ordinary seaman, also filed a notice of consent to participate in the collective action.[95] Mr. Sims was employed in various jobs—crane operator, loading and unloading the vessel, and as a galley hand. Although Defendant suggests that any class certified should be limited to cooks aboard the L/B Miami,[96] Mr. Sims has a more varied employment history. Furthermore, it would be difficult to analyze the status of the cooks on the Defendant's liftboats separately from the other crewmembers because whether a cook is a non-FLSA seaman depends on the

---

[91] *Falcon*, 580 F. Supp. 2d at 540-41.
[92] *Id.*
[93] R. Doc. 23 at pp. 2-3.; R. Doc. 34 at pp. 4-6.
[94] R. Doc. 14.
[95] R. Doc. 15.
[96] R. Doc. 34 at p. 7.

FLSA seaman status of those the cook serves--crewmembers and passengers.[97] A cook for non-FLSA seamen is himself not an FLSA seaman.[98]

The Plaintiff has the burden to establish that putative class members were affected by a common policy, plan, pattern or practice' to meet the similarly situated requirement."[99] There must be substantial allegations that potential members were together the victims of a single decision, policy, or plan.[100] "G]eographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy."[101] The Court finds that Plaintiff has met his burden of showing the members of the collective were subject to a common policy or practice with respect to the payment of overtime wages, namely that all crew members on liftboats were classified as FLSA-exempt seamen and not paid overtime by the Defendant. This existence of a uniform policy weighs heavily in favor of certifying the collective.[102]

In the end, the Court finds the putative members of the collective are similarly situated as there is a common question at issue in this case—whether the putative members of the collective working on liftboats were affected by a common policy or practice classifying all of them as FLSA-exempt seaman rendering a service that was

---

[97] The importance of contractors being on the liftboat is contractors ordinarily do not further the navigational purpose of the vessel and, instead, is often referred to as industrial work.
[98] Adams v. All Coast, LLC, 15 F.4th 365, 376-377 (5th Cir. 2021).
[99] *Loy v. Rehab Synergies, LLC*, No. 18-4, 2021 WL 3931926, at *8 (S.D. Tex. Sept. 2, 2021) (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535-36 (S.D. Tex. 2008)).
[100] *Caballero v. Kelly Servs., Inc.*, No. 14-1828, 2015 WL 12732863, at *3 (S.D. Tex. Oct. 5, 2015) (internal quotations omitted) (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)).
[101] *Loy*, 2021 WL 3931926, at *8 (quoting *Vargas v. Richardson Trident Co.*, No. 09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010)).
[102] *Hamm v. Acadia Healthcare Co.*, No. 20-1515, 2022 WL 2713532, at *2-3 (E.D. La. July 13, 2022); *Caballero*, 2015 WL 12732863, at *3 (quoting *McKnight*, 756 F. Supp. 2d at 801); *Loy*, 2021 WL 3931926, at *8.

primarily an aid in the operation of such vessel as a means of transportation, without regard to whether they performed a substantial amount of work of a different character.

## II.    Fairness and procedural considerations favor certification of the collective.

With respect to fairness and procedural considerations, "a court considers the FLSA's objectives with regard to collective actions, specifically lowering the costs of plaintiffs through aggregation and consolidating common issues of law and fact arising from the same alleged activity."[103] Certification will significantly lower the cost of litigation members of the collective and allow them to have their claims heard in an efficient and cost-effective manner. It is likely many of the members will be unable to pursue their claims individually if the Court denies certification.

Manageability and the number of opt-in plaintiffs are also pertinent to the third factor.[104] On the third factor, Defendant claims Plaintiff "has not demonstrated interest sufficient to justify notice to a putative class."[105] First, Plaintiff has not worked with Alliance since October 24, 2023.[106] In light of this fact, it is unlikely that Plaintiff currently has access to his former co-workers' contact information such that he could gauge interest in this proposed collective action.[107] Second, Plaintiff has filed on the record two "Fair Labor Standards Act Employment Services Consent" forms signed by Alliance employees.[108] These forms demonstrate that at least two Alliance employees other than

---

[103] *Ebbs*, 2014 WL 12717703, at *4 (citing *Johnson*, 2005 WL 1994286, at *7).
[104] *Id.*; *see also Badon v. Berry's Reliable Res., LLC*, No. 19-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021) ("Finally, as to fairness and procedural considerations, the Court notes that the collective action now contains only six members in total—a far cry from collective actions containing dozens or hundreds of members, which would present larger procedural concerns.").
[105] R. Doc. 23 at p. 23.
[106] R. Doc. 23-5.
[107] *Hamm*, 2022 WL 2713532, at *4.
[108] R. Doc. 14; R. Doc. 15.

Plaintiff "consent to make a claim against Alliance" for unpaid overtime work.[109] Third, the FLSA defines a collective as comprised of "one or more employees."[110] Plaintiff, and the two other Alliance employees who signed FLSA Services Consent forms, meet this definition of a collective. The Court further notes that fear of retaliation and the relatively small value of individual damages may artificially underestimate the size of the membership of the opt-in FLSA collective action.[111] Considering that two individuals have joined the Plaintiff by filing notices of their intent to participate,[112] and finding that fairness and procedural considerations weigh in favor of certifying the proposed collective action, the Court rejects Defendant's argument as to Plaintiff's failure to show interest sufficient to justify notice.[113] Fairness and procedural concerns justify certification of the proposed collective.

Because the collective members were subject to a single policy, moving forward as a collective action also is in the interest of judicial economy. A collective action will lower the putative collection action members' costs through aggregation, consolidate similar claims, and allow the factfinder to answer the question presented by Plaintiff, whether the putative collective is subject to Defendant's uniform policy or practice of characterizing them as FLSA-exempt seaman in violation of their rights under the FLSA. Although the trial of this action may involve a large number of fact witnesses, the Court believes that a

---

[109] R. Doc. 14; R. Doc. 15.
[110] 29 U.S.C. § 216(b).
[111] *See Leon v. Diversified Concrete, LLC*, No. 15-6301, 2016 WL 6247674, at *5 (E.D. La. Oct. 26, 2016); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) ("It also [may be] reasonably presumed that those potential class members still employed by [the defendant] might be unwilling to sue individually or join a suit for fear of retaliation at their jobs.").
[112] R. Docs. 14, 15.
[113] *Dardar v. Pit Stop Eatery of Houma, LLC*, No. 20-1605, 2021 WL 5513417, at *5 (E.D. La. Mar. 30, 2021); *Hamm*, 2022 WL 2713532, at *4.

single trial is manageable. There is nothing before the Court indicating this case is unmanageable as a collective action.

## III.   The Court will certify the proposed collective action.

"[T]he district court has broad, litigation-management discretion, cabined by the FLSA's 'similarly situated' requirement" in its decision on whether to certify a collective action.[114] The Court finds the proposed collective meets 29 U.S.C. § 216(b)'s similarly situated standard. First, the proposed collective is subject to Defendant's policy of classifying its liftboat employees as FLSA-exempt seaman. Second, the common question of whether the employees are FLSA-exempt seaman may be answered on a class-wide basis. Third, the individualized defenses available to Defendant affect only a subset of the proposed collective and do not prevent the Court, or the jury, from deciding this matter with respect to the entire collective. Fourth, certification of a collective action does not present unmanageability concerns, and will allow for lower costs through aggregation and consolidation of similar claims. Finally, certification will promote judicial economy by avoiding duplicative trials.

Accordingly;

### <u>CONCLUSION</u>

**IT IS ORDERED** that the motion to certify collective action is **GRANTED**.[115] The collective shall be certified with the following definition:

> All individuals employed by Alliance Liftboats, LLC and/or Helix Energy Solutions as crewmembers of the following vessels: L/B GALVESTON; L/B LAFAYETTE; L/B NEW ORLEANS, L/B HOUSTON; L/B MEMPHIS; L/B NASHVILLE; L/B CHARLESTON; L/B MIAMI; and L/B DALLAS for the

---

[114] *Loy*, 71 F.4th at 337.
[115] R. Doc. 19.

_____[insert time period]_____, who performed a substantial amount of non-seaman work, yet were misclassified as exempt from overtime.[116]

**IT IS FURTHER ORDERED** that counsel for all parties shall meet and confer regarding the notice and consent forms to be used in this action (and the method for delivery of the notice), as well as the applicable time period. On or before November 3, 2025, the parties must either file their agreed upon notice and consent forms or, if there is no agreement, Plaintiff must file his proposed notice and consent forms. Defendant will have an until November 10, 2025 to file any objections to Plaintiff's notice and consent form filed with this Court and/or to file its own proposed notice and consent form.[117]

**New Orleans, Louisiana, this 6th day of October, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[116] The Court has slightly modified the class definition, as it has the right to do. *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149 (S. D. Tex. Dec. 11, 2008).

[117] The Court may at a later date create subclasses or bifurcate liability and damages pursuant to its broad discretion to manage the trial of this case. "The bottom line is that the district court has broad, litigation-management discretion here." *Swales*, 985 F.3d at 441.