**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PATRICK BREAUX, et al.**<br>**Plaintiffs,**<br><br>**v.**<br><br>**ALLIANCE LIFTBOATS, LLC, et al.**<br>**Defendants.** | **CIVIL ACTION NO.: 2:24-cv-01000**<br><br>**JUDGE SUSIE MORGAN**<br><br>**MAGISTRATE JUDGE KAREN WELLS ROBY** |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO ALLOW LATE FILING OF CONSENTS FOR SEAN WILSON, RYAN SUTTON, AND JOSEPH PHILLIPS**

NOW INTO COURT, through undersigned counsel, comes Defendant, Alliance Liftboats, LLC ("Defendant" or "Alliance"), which respectfully submits this Memorandum in Opposition to Plaintiffs' Motion for Leave to Allow Late Filing of Consents for Sean Wilson, Ryan Sutton, and Joseph Phillips (the "Motion").[1] For the reasons set forth below, Plaintiffs' Motion should be denied.

## I. BACKGROUND

On May 19, 2025, Named Plaintiff, Patrick Breaux, filed his Motion to Certify Collective Action ("Motion to Certify"), which this Court granted on October 6, 2025.[2] Pursuant to the Court's order granting the Motion to Certify, Plaintiffs filed a Consent Motion to Approve FLSA Notice, Consent-To-Join Form, and Terms of Delivery ("Motion to Approve FLSA Notice").[3] In connection with the Motion to Approve FLSA Notice, Plaintiffs presented a proposed notice and consent form,[4] which the parties agreed would "be mailed, emailed, and texted to all potential

[1] R. Doc. 172.
[2] R. Doc. 38.
[3] R. Doc. 40.
[4] R. Doc. 40-2.

collective action members."[5] The Court granted the Motion to Approve FLSA Notice on January 9, 2026,[6] and the initial approved notice and consent forms were sent to the first group of potential collective action members on January 31, 2026.

Per the Court's January 9, 2026 Order, the potential collective action members had until March 31, 2026, to opt into the suit.[7] Accordingly, potential collective action members were afforded 60 days to opt in to this suit. The Court also permitted Plaintiffs to send 30-day reminder notices to the potential collective action members.[8] Plaintiffs ultimately sent reminder notices to all potential collective action members on March 27, 2026. Thus, prior to the March 31, 2026, deadline to opt in to this suit, a total of six notices were sent to each potential collective action member—two mailed notices, two emailed notices, and two texted notices.

During a March 31, 2026 status conference, this Court granted Plaintiffs' oral request to extend the collective action opt-in period from March 31, 2026 until May 1, 2026, providing potential collective action members an additional 30 days to opt into the suit.[9] Moreover, this Court permitted Plaintiffs to send additional notices to the individuals already in receipt of Plaintiffs' March 27, 2026 reminder notice, "informing them that they had until May 1, 2026 to file a consent form to participate in this lawsuit."[10] Accordingly, Plaintiffs sent a third set of notices to all potential collective action members on or around April 21, 2026.

In total, ***nine*** notices were sent to all potential collective action members, including Mr.

[5] R. Doc. 40 at 1.

[6] R. Doc. 52.

[7] R. Doc. 52.

[8] *See* R. Docs. 51, 52.

[9] R. Doc. 52 (ordering that "opt-in claimants shall have until March 31, 2026 to join").

[10] R. Doc. 130. The Court's rulings were made over Defendant's objection. Specifically, Defendant objected to Plaintiffs' contention that the brief stay of the case while appeal was pending (February 27, 2026 – March 12, 2026), prevented any class members from opting in or Plaintiffs' counsel from sending reminder notices, warranting an extension of the notice and opt-in periods. R. Doc. 138.

Wilson, Mr. Sutton, and Mr. Phillips, beginning ***90 days*** (a full three months) in advance of the May 1, 2026 deadline to opt in. Despite receiving these notices, Mr. Wilson, Mr. Sutton, and Mr. Phillips did not sign their opt-in consent forms to join the suit until August 28, 2026—nearly 17 weeks after the May 1 deadline. Plaintiffs now seek leave to file the opt-in consent forms of Mr. Wilson, Mr. Sutton, and Mr. Phillips out of time.

## II. LAW AND ARGUMENT

Plaintiffs ask this Court to excuse three untimely opt-in consent forms filed nearly seventeen weeks after the Court-ordered deadline, even though Mr. Wilson, Mr. Sutton, and Mr. Phillips received repeated Court-approved notices over a three-month period and had ample opportunity to act. Plaintiffs have not shown good cause, diligence, or any circumstance beyond their control that prevented timely filing. Nor do prior court rulings permit Plaintiffs to rely on an unsupported fear of retaliation to justify disregarding opt-in deadlines. Because allowing these late opt-ins would undermine the Court's notice process, further prejudice Defendant's reliance on the opt-in deadline, and render the deadline functionally meaningless, Plaintiffs' Motion should be denied.

### A. Plaintiffs Fail to Establish Good Cause to Permit the Late Opt-In of Mr. Wilson, Mr. Sutton, and Mr. Phillips.

Plaintiffs' attempt to justify their untimely opt-in forms based on an alleged fear of retaliation falls short of establishing good cause. Plaintiffs assert that Mr. Wilson, Mr. Sutton, and Mr. Phillips each "believed that putting his name on a lawsuit against his current employer would adversely affect him on the job."[11] Such a concern does not constitute good cause.

[11] R. Doc. 172-1, p. 1.

To the contrary, courts have held that "an individual's unsupported fear of retaliation is not sufficient to establish good cause,"[12] and courts within the Fifth Circuit have acknowledged that "fear of retaliation [does not] excuse untimely return of opt-in notice."[13] Plaintiffs offer no evidence whatsoever that would have given rise to a reasonable fear of retaliation. In fact, the agreed-upon notice sent to Mr. Wilson, Mr. Sutton, and Mr. Phillips informing them of their potential rights specifically addressed the issue of retaliation.[14] The notice expressly states, in bold, that "**Retaliation Is Prohibited**," and further explains that the "Court and Federal law prohibit anyone from firing or in any way discriminating against you because you join this case."[15] Thus, the very document on which Plaintiffs' participation depended unequivocally informed them that federal law and this Court would protect them from retaliation. There was no uncertainty requiring investigation. Rather, the protection from retaliation was clearly stated in **all nine notices** they received.

Moreover, the asserted fear of retaliation is belied by the actions of more than eighty other individuals who received the same notice and timely filed consent forms. To the extent any of those individuals harbored similar concerns, they nevertheless acted within the Court-ordered deadline, as the notice expressly assured them that retaliation was unlawful. This underscores that Plaintiffs have identified no objective basis for Mr. Wilson, Mr. Sutton, and Mr. Phillips' claimed fear of retaliation and no circumstance that prevented them from timely opting in. Consistent with the authority

---

[12] *Heather Eng'g v. Texas Farm Bureau Bus. Corp.*, 462 F. Supp. 3d 662, 665 (W.D. Tex. 2020) (quoting *Ferguson v. Texas Farm Bureau*, No. 6-17-CV-00111-ADA, 2019 WL 6609696, at *3 (W.D. Tex. Dec. 5, 2019)).

[13] *Heather Eng'g*, 462 F. Supp. 3d at 665 (quoting *Evans v. Lowe's Home Centers, Inc.*, No. 3:CV-03-438, 2005 U.S. Dist. LEXIS 45137, at *4, 2005 WL 6742284, at *1 (M.D. Pa. Mar. 3, 2005)); *see also*, *Ferguson*, 2019 WL 6609696, at *3; *Moya v. Pilgrim's Pride Corp.*, No. CIV A 06-1249, 2006 WL 3486739, at *2–3 (E.D. Pa. Nov. 30, 2006) (finding that an opt-in plaintiff's fear of retaliation was not good cause).

[14] R. Doc. 40-2, p. 3.

[15] R. Doc. 40-2, p. 3.

rejecting similar arguments, Mr. Wilson, Mr. Sutton, and Mr. Phillips' "contention that [they] were fearful of potential retaliation by Defendant[] is insufficient to establish good cause."[16]

Further, even if Mr. Wilson, Mr. Sutton, or Mr. Phillips had questions and concerns about retaliation, they could have contacted counsel and been reassured they were protected under the FLSA.[17] "Due diligence required them to, at a minimum, consult with the attorneys for plaintiffs identified on the notice in timely fashion."[18] However, Mr. Wilson, Mr. Sutton, and Mr. Phillips failed to do even this until well beyond the opt-in deadline. Plaintiffs' arguments and the sworn declarations of Mr. Wilson, Mr. Sutton, and Mr. Phillips are devoid of any evidence of diligent efforts over the course of the 90-day notice period, much less the additional 119 days it took Mr. Wilson, Mr. Sutton, and Mr. Phillips to sign and return their opt-in consent forms.

Their declarations also do not supply competent, particularized facts establishing good cause. The filed Wilson declaration contains no factual averments at all. The Phillips declaration is facially incomplete: paragraph two omits words, and paragraph three states only "concerned about retaliation," without identifying what changed, when it changed, or what investigation occurred. Mr. Sutton states that he later spoke with counsel and others, but he does not say when those conversations began, why they could not have occurred before May 1, or what prevented him from making the same inquiry during the notice period. Generalized assertions in counsel's memorandum cannot fill those evidentiary gaps.[19]

Plaintiffs' own description confirms that the delay resulted from a deliberate choice, not an inability to act. Plaintiffs concede that the movants affirmatively "declined to sign" and signed

---

[16] *Heather Eng'g*, 462 F. Supp. 3d at 665.

[17] *See id*. ("If [plaintiff] had questions and concerns about retaliation, he could have contacted counsel and been reassured he was protected under the FLSA.")

[18] *Id*.

[19] *See* R. Docs. 172-3, 172-4, 172-5.

only after an unspecified "investigation changed their analysis." A voluntary decision to defer joining the case, followed by a later reassessment, is not an external impediment and does not establish diligence. If a noticed individual may intentionally decline to opt in and then reverse that decision nearly four months after the deadline without making a particularized showing, the deadline ceases to provide any meaningful cutoff.[20]

Plaintiffs have not carried their burden to establish good cause to permit the late opt-in of Mr. Wilson, Mr. Sutton, and Mr. Phillips. The motion should be denied.

**B. The Court's Prior Roberson and Clay Rulings Do Not Excuse Mr. Wilson, Mr. Sutton, and Mr. Phillips' Failure to Act on Repeated Notices.**

The Court's prior orders granting leave to Aaron Roberson and Dalton Clay do not compel the same result. While Defendant maintains its objections and avers that these opt-ins should have been excluded as untimely, Mr. Roberson sought leave within three weeks of the deadline and asserted that offshore work prevented him from receiving the notice. Mr. Clay sought leave approximately ten weeks after the deadline and asserted that he mistook the notices for spam. Comparatively, the instant three movants were aware of the litigation, consciously declined to join it, and waited approximately seventeen weeks after the deadline before signing their forms. The asserted justification and the length of delay are materially different.

Plaintiffs now seek to add three additional late opt-ins, and their position offers no limiting principle for additional late filings. The Court's prior finding that one additional plaintiff would not prejudice Alliance does not establish that repeated, cumulative additions at progressively later dates are necessarily nonprejudicial. The Court's prior rulings should not be taken as an open-ended invitation to ignore court ordered deadlines.

[20] R. Doc. 172-1 at 2.

The authorities cited in the prior briefing underscore the distinction. While *Coronado* and *Radford* reflect the Court's broad discretion to permit late opt-ins in appropriate circumstances, they also show why Plaintiffs' current motion should be denied. In *Coronado*, the delays ranged from four to seventeen ***days*** (not weeks), and most late filers had signed by the deadline but were delayed by postal delivery, late receipt, or address changes.[21] The court also imposed a clear cutoff: any notice of consent received after the extended deadline would be rejected as untimely unless the late filer showed good cause.[22] Likewise, *Radford* did not create an open-ended right to opt in late. The court instead recognized the burden that serial late opt-ins could impose. Although the court allowed a late opt-in after weighing all relevant factors, it expressly took seriously the concern that additional late filers would continue burdening the defendant, stating that future late filings would be evaluated case by case.[23]

These authorities support discretion, not automatic forgiveness. They do not create a rule that good cause exists whenever an untimely opt-in would add only one plaintiff to an existing collective. The question remains whether Mr. Wilson, Mr. Sutton, and Mr. Phillips have offered a satisfactory explanation for missing a Court-ordered deadline after admittedly receiving Court-approved notice. They have not.

### C. Plaintiffs' Production of Fact Sheets Does Not Cure the Lack of Good Cause.

The production of fact sheets does not establish good cause for the movant's failure to comply with the Court-ordered deadline. The fact sheets address information relevant to the merits and damages; they do not explain why the three individuals waited until August 28, 2026, to sign their consent forms after receiving repeated notice of the May 1 deadline. Nor does their production

[21] *Coronado v. D N.W. Houston, Inc.*, No. H-13-2179, 2014 U.S. Dist. LEXIS 164151, at *6–7, *11 (S.D. Tex. Nov. 24, 2014).

[22] *Id.* at *15.

[23] *Radford v. Pevator Cos., Ltd.*, No. H-17-3381, 2019 U.S. Dist. LEXIS 13330, at *7–8 (S.D. Tex. Jan. 28, 2019).

foreclose the need for follow-up written discovery, document collection, or depositions after Alliance evaluates the individuals' employment histories and claimed damages. The Court should therefore assess the threshold good-cause requirement independently of Plaintiffs' subsequent production of discovery materials.

The production also does not erase the timing consequences of adding claimants after the opt-in period closed. Written discovery is underway, a scheduling order has now long been in place, and trial is set. Permitting serial additions based on unsupported explanations undermines Alliance's reasonable reliance on the Court-ordered deadline and leaves no clear limiting principle for still more late opt-ins as the case progresses.

**D. Plaintiffs' Judicial Economy Concerns are Insufficient to Overcome the Failure to Show Good Cause.**

The Fifth Circuit has held that the right "to proceed collectively" under the FLSA "is not a substantive right."[24] Indeed, Mr. Wilson, Mr. Sutton, and Mr. Phillips, regardless of whether they may pursue separate FLSA claims, which Defendant denies, do not have the right to participate in a collective action.[25] Therefore, their inability to proceed collectively does not deprive them of any substantive rights under the FLSA. While Mr. Wilson, Mr. Sutton, and Mr. Phillips may pursue their claims outside of this lawsuit, Plaintiffs' argument that they would simply file separate lawsuits should this Court deny Plaintiffs' Motion is insufficient to overcome the failure to show good cause or diligence.

Even assuming Mr. Wilson, Mr. Sutton, or Mr. Phillips filed a separate lawsuit, they would not be subject to this Court's previous equitable tolling ruling, and to the extent they sought equitable tolling of their belated claims, would be subject to an individual analysis of their due

[24] *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004).

[25] *Levy v. Schlumberger Tech Corp.*, No. 6:16-CV-00043, 2016 WL 6885916, at *5 (W.D. La. Nov. 2, 2016), *report and recommendation adopted*, No. 6:16-CV-00043, 2016 WL 6888129 (W.D. La. Nov. 21, 2016).

diligence in filing suit. Mr. Wilson, Mr. Sutton, and Mr. Phillips simply cannot meet that standard here, particularly given their inability to demonstrate any diligence in filing their consent forms. Nor is this the proper mechanism for doing so.

Plaintiffs' argument also presupposes that Mr. Wilson, Mr. Sutton, and Mr. Phillips' hypothetical separate lawsuit will be consolidated with this one. However, Mr. Wilson, Mr. Sutton, and Mr. Phillips would be required not only to file a separate lawsuit, but also to affirmatively seek consolidation, for which they will "bear the burden of demonstrating that consolidation is proper."[26] Plaintiffs have not done so here. Mr. Wilson, Mr. Sutton, and Mr. Phillips' lack of diligence should not be excused simply because another procedural avenue could plausibly—though unlikely—allow them to achieve a different result. Plaintiffs' arguments regarding judicial economy are unpersuasive and do not overcome their failure to show good cause.

**E. In the Absence of Good Cause, Defendant Will Be Prejudiced by the Late Opt-Ins.**

Allowing Mr. Wilson, Mr. Sutton, and Mr. Phillips to opt in late—without good cause—would again prejudice Defendant's reasonable reliance on the Court's notice process and deadlines. These three individuals admit receiving Court-approved notices, concede their understanding that they were genuine notices, but nevertheless waited until 119 days after the deadline to sign their consents. Defendant reasonably relied on the Court-ordered deadline to evaluate who had joined the case and who had not. There must be a meaningful cutoff to the opt-in window; otherwise, there is no practical point in having one. A noticed individual should not be permitted to join an FLSA collective at any time, for virtually any reason, based only on an unsupported fear and no showing of diligence, external impediment, or accountability for the

[26] *Texas v. United States*, No. 6:21-cv-00016, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021) (citing *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993)).

failure to act. Such a rule would expand the collective beyond the boundaries set by the Court and render the FLSA notice period of no moment.

## III. CONCLUSION

For these reasons, Plaintiffs have not established good cause for the untimely opt-in of Mr. Wilson, Mr. Sutton, or Mr. Phillips. Accordingly, Plaintiffs' Motion should be denied.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: ______________________
David M. Korn (Bar #21676)
Rebecca Sha (Bar #35317)
Stephanie M. Poucher (Bar #37263)
Fallon Voltolina (Bar #40983)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: korndr@phelps.com
rebecca.sha@phelps.com
pouchers@phelps.com
fallon.voltolina@phelps.com

**ATTORNEYS FOR DEFENDANT**